[No. A082166. First Dist., Div. Three. Oct. 26, 1998.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL JOHN McGLOTHIN, Defendant and Respondent.

## COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, and Christopher W. Grove, Deputy Attorney General, for Plaintiff and Appellant.

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**CORRIGAN, Acting P. J.**—Here we reverse an order of the trial court striking a serious felony prior, because the court ignored the "Three Strikes" sentencing scheme articulated by the Legislature and substituted its own private view of an appropriate sentence. In doing so, the court failed to follow sentencing guidelines set out in the California Rules of Court and in case law. The court also ignored its own conclusions about the crimes themselves and the defendant who committed them. Such actions constitute an abuse of discretion.

*Facts*[1]

Shortly after 11 p.m., 75-year-old Winford Beasley and 68-year-old Harriet Razo left the Fairfield Bowl and walked to Mr. Beasley's car. While Ms.

---

[1]Upon request of the Attorney General and upon defendant's representation that he has no objection, we have taken judicial notice of the record from the initial appeal, *People v. McGlothin* (June 3, 1997) A071105/A071788 (nonpub. opn.). This recitation of facts is based

Razo got in the car and Mr. Beasley put their bowling equipment in the trunk, two men approached. The taller of the two grabbed Mr. Beasley and threatened to kill him unless he relinquished his money. One assailant hit Mr. Beasley, then both men wrestled him to the ground. The larger man held Mr. Beasley, while the smaller man tried unsuccessfully to secure Mr. Beasley's wallet, tearing Mr. Beasley's trousers to pieces in the process. Mr. Beasley's glasses were knocked off and his hearing aid was damaged during the struggle. Mr. Beasley yelled and the smaller man fled. Mr. Beasley testified that after the smaller man left there were still two men at the scene. He did not see the third man approach nor did he know where the third man came from. One attacker approached Ms. Razo when she got out of the car to investigate. Saying "I need money. I need money," he took her purse. Ms. Razo testified that, after she got out of the car, she saw two men standing over Mr. Beasley, who was on the ground. One of the men approached Ms. Razo and grabbed an envelope from her containing $4 that she had just won in a bowling tournament This same man took Ms. Razo's purse from the seat of the car. When he said, "Let's go. I've got her purse," these two men fled.

Shortly after the incident, Jesse E., aged 16, and Jackie Reynolds were arrested in a car matching the description of one seen driving away from the vicinity of the attack. Ms. Razo's envelope containing the $4 was found in the car. The car belonged to Jesse's mother, who had lent it to defendant the day of the robbery.[2] Jesse told police that defendant had picked him up at school that day. Many hours later defendant picked up Reynolds and the two older men talked about committing a robbery. The three drove to a bowling alley. Jesse claimed defendant and Reynolds left but that he remained in the car. Jesse heard yelling; Reynolds ran back to the car, and they left without defendant.

As Jesse was being driven to the police station after his arrest, he saw defendant walking down the street and identified him as the third man involved in the attacks. Defendant was placed in a police car and taken to the stationhouse. During the trip, defendant twice spit on the transporting officer's head. Jesse was cited for robbery and released to his mother. As Jesse's mother was talking to an officer about her car, defendant yelled from a nearby cell: "Don't tell them motherfuckers anything. Keep your mouth shut."

Jesse testified at the preliminary hearing and at trial that he attacked Mr. Beasley while Reynolds stole Ms. Razo's purse. He testified defendant was

on that record, as well as the additional information provided by the parties in connection with this appeal.

[2] Jesse's mother subsequently married defendant.

not involved in the crimes and that he lied to police because he was frightened. Testimony from the victims and other witnesses differed about the identity of the robbers and the number of men involved. Neither victim identified defendant. A jury found defendant guilty of robbery, attempted robbery and misdemeanor battery on an officer. The court expressed no reservation about the jury's conclusions. To the contrary, the court noted: "[I]t would be a lot easier for me to consider the defendant's plea [for leniency] had he not presented that cock-and-bull defense that he did. . . . [T]he fact that he tried to manipulate . . . a child, as well as other acquaintances, in order to escape justice in this case. [¶] Luckily, the trier of fact saw through all that, and he was convicted." The jury subsequently found true the allegations that defendant had previously been convicted of two serious felonies. After that finding was set aside for juror misconduct, a second jury reached the same conclusion. Defendant was originally sentenced to 25 years to life under the Three Strikes law. On appeal, defendant's convictions were affirmed, but the case was remanded for the court to exercise the sentencing discretion confirmed in *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. (*People* v. *McGlothin, supra,* A071105/A071788.)

On remand, the trial court struck one of defendant's serious felony priors under Penal Code section 1385.[3] The court then treated this as a "two strikes" case, imposing the upper term of five years for the robbery, with an additional eight months, or one-third the midterm for the attempted robbery, doubling the sentence under section 667, subdivision (e)(1) for a total of eleven years and four months.[4] The Attorney General has appealed, alleging that the trial court abused its discretion in striking one of defendant's priors. The appeal is well taken.

## Discussion

Section 1385 provides in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes." ▮ *People* v. *Superior Court (Romero), supra,* 13 Cal.4th 497, confirmed that under the Three Strikes sentencing scheme the trial court retains the discretion to dismiss, or strike, one or more of a defendant's prior convictions, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Id.* at p. 504.) The

---

[3]Unless otherwise indicated, all statutory references are to the Penal Code.

[4]The court imposed a one-year county jail sentence for the battery on a peace officer conviction and ordered that sentence to run concurrently with defendant's state prison term.

*Romero* court went on to provide guidance for the trial courts in the exercise of this discretion. In doing so, the majority noted: "[W]e emphasize the following: A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a) . . . ." (*Id.* at p. 530.) The *Romero* opinion quoted at length from *People* v. *Orin* (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193], as do we: "The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be 'in furtherance of justice.' As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of the court's action in the instant case, we are guided by a large body of useful precedent which gives form to the above concept. [¶] From the case law, several general principles emerge. Paramount among them is the rule 'that the language of [section 1385], "in furtherance of justice," requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]' [Citations.] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' [Citations.]" (*People* v. *Orin, supra*, 13 Cal.3d at p. 945, quoted in *People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 530-531, original italics.)

The *Romero* court noted that discretion is abused if a court dismisses an allegation for judicial convenience, to relieve court congestion, or simply because a defendant pleaded guilty. The court went on to point out: "Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation]." (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 531.)

Earlier this year the Supreme Court returned to the issue of a section 1385 dismissal in the Three Strikes context. In *People* v. *Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*), the court pointed out that, while the appellate review standard is a deferential one, "it is not empty." (*Id.* at p. 162.) Justice Mosk summarized the court's view: "We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present

felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be *deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had presently not committed one or more felonies* and/or had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161, italics added.)

Justice Mosk acknowledged that, as an academic matter, one seeking to determine whether an act is "in the furtherance of justice" may look to general principles, outside the framework of the sentencing scheme, or be guided, instead, by the particulars of the scheme itself, informed as well by "generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects," including the factors found in California Rules of Court, rule 410 et seq. (*Williams, supra,* 17 Cal.4th at p. 160.) The Supreme Court has adopted the latter approach. "The scheme itself constitutes the 'letter' of the law. More than perhaps any other source, it may also suggest its 'spirit.' " (*Ibid.*) Referring back to *Romero,* the court reiterated its caution against relying on factors "extrinsic to the [sentencing] scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant." (*Id.* at p. 161.)

The Supreme Court has thus made clear that a decision to strike a prior is to be an individualized one based on the particular aspects of the current offenses for which the defendant has been convicted and on the defendant's own history and personal circumstances. This approach allows the court to perform its obligation to tailor a given sentence to suit the individual defendant. But the court must also be mindful of the sentencing scheme within which it exercises its authority. In deciding to strike a prior, a sentencing court is concluding that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.

■ The *Williams* court concluded the trial judge abused his discretion in striking a prior. We do likewise. In reaching this conclusion we apply long-standing section 1385 principles, which predate the enactment of the Three Strikes law. In *People* v. *Jackson* (1986) 178 Cal.App.3d 694 [224 Cal.Rptr. 37], Justice Eagleson pointed out: "The striking of a prior serious felony conviction is not a routine matter. It is an extraordinary exercise of discretion, and is very much like setting aside a judgment of conviction after trial." (*Id.* at pp. 697-698.) In reviewing this decision we follow the Supreme Court's direction to consider the nature and circumstances of the present

crimes; the defendant's prior convictions; his background, character and prospects. Not one of these factors supports a reasonable conclusion that this defendant "may be deemed outside the scheme's spirit, in whole or in part and hence should be treated as though he had . . . not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra,* 17 Cal.4th at p. 161.)

We turn first to the facts of these offenses and review the sentencing factors set out in California Rules of Court, rule 421. These crimes, perpetrated on two elderly individuals, one of whom was knocked to the ground, and accompanied by a threat of death, involved the potential for great bodily harm. (Cal. Rules of Court, rule 421(a)(1).) The victims were particularly vulnerable because of their age and because they were attacked by surprise in a parking lot, late at night. (Rule 421(a)(3).) The defendant induced a minor to participate in the commission of these violent crimes. (Rule 421(a)(5).) Defendant tried to dissuade Jesse's mother from giving information to the police. Jesse's recantation supports the trial court's conclusion that he tried "to manipulate . . . a child, as well as other acquaintances, in order to escape justice in this case." (Rule 421(a)(6).) None of the mitigating factors contained in California Rules of Court, rule 423(a) apply to the circumstances of these offenses.

Next, we consider the aggravating and mitigating factors relating to defendant and his background. Defendant's history of criminal conduct extends back to 1972 when he was 15 years of age. He suffered juvenile findings for accessory to robbery, robbery and burglary. As an adult, before the current crimes, defendant had been convicted of seven previous felonies. These offenses include two robberies, shooting at an occupied dwelling, battery on a peace officer, auto theft and a drug offense. He had also been convicted of misdemeanors for assault with a deadly weapon and hit-and-run driving. His probation or parole has been revoked seven times over thirteen years.

Defendant's background brings him within every aggravating factor specifically set out in California Rules of Court, rule 421(b). His history of violent conduct demonstrates he is a danger to society. (Rule 421(b)(1).) His prior convictions are both numerous and serious. (Rule 421(b)(2).) He has served previous prison terms. (Rule 421(b)(3).) He was on parole when he committed these crimes. (Rule 421(b)(4).) His previous probation and parole performance have been marked by repeated failure. (Rule 421(b)(5).) Not a single mitigating factor found in California Rules of Court, rule 423(b) applies to defendant.

In light of these facts we examine the reasons the trial court gave for exercising its discretion to give the defendant lenient treatment. The court

set out its reasons as follows: "I am going to exercise the Court's power with . . . 1385 discretion and strike the May 15, 1986 prior. And I do that for the reasons I've already stated on the record: The fact that these convictions occurred within 60 days of each other; they were at a time in this defendant's life that he was going through a much more difficult social situation than later on. *But essentially I'm doing it for—because I don't think the punishment in this case should warrant a life-top sentence.*" (Italics added.)

The two offenses giving rise to the convictions were committed within a relatively brief span of time. They were also serious felonies committed in two different counties. The court did not explain why the time span during which the offenses were committed was particularly mitigating, except to say that the defendant was undergoing a "difficult social situation." The record before us does not establish that there was anything particularly remarkable about defendant's social situation at the time he committed the two previous robberies. Also, the court's conclusion is at odds with its subsequent observation that: "[T]his defendant's criminal history is one of the worst I've ever witnessed. He has been a full and complete failure at probations and paroles in the past. Almost every time he's granted parole, he's violated for one reason or another." At another point the court observed: "Calling to the Court's attention the defendant's background is not really helpful for this defendant, because he has a pitiful criminal history. I don't know how many years we have to accept his social up-bringing as an excuse for his criminal behavior. But he's now, what, 40 years old? 41. Something like that. And for better than half of his life, he has been a fully active participant in the criminal justice system."

The court accurately stated the essential reason it struck one of defendant's prior convictions: "I said it at the time of the original sentencing; that in my view the level of crime in this case did not warrant a 25-year-to-life sentence. And my feelings in that regard haven't changed."

Our system of laws confers upon each judge the discretion necessary to weigh punishment and mercy, to find that exquisite balance in which a just sentence reposes. Yet, in a democracy, the scope of a judge's authority is encompassed by the judgment of the citizens who bestow on the judiciary its authority in the first instance. Under our statutory framework, judges are not empowered to fashion any sentence they choose. The Legislature has created a sentencing structure within which every court must operate. Both the Legislature and the People, by initiative, have adopted a particular sentencing scheme for repeat offenders. A court may not simply substitute its own opinion of what would be a better policy, or a more appropriately calibrated system of punishment, in place of that articulated by the People from whom

the court's authority flows. ■ Indeed, as Justice Sullivan noted in *People* v. *Orin*, the reason a court is required to state the basis for a section 1385 dismissal is " 'to protect the public interest against improper or corrupt . . . dismissals' and to impose a purposeful restraint upon the exercise of judicial power ' "lest magistral discretion sweep away the government of laws." ' [Citations]." (13 Cal.3d 937, 944, quoting *People* v. *Winters* (1959) 171 Cal.App.2d Supp. 876, 882 [342 P.2d 538].)

■ Neither the facts of these crimes nor the circumstances of the defendant's personal history or current situation support a conclusion that he should "be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had . . . not previously been convicted of one or more serious and/or violent felonies." (*Williams, supra,* 17 Cal.4th at p. 161.) Here the court looked beyond the Three Strikes sentencing scheme itself and beyond the "generally applicable sentencing principles." (*Id.* at p. 160). Instead, the court simply concluded that life in prison was too harsh a penalty for attempted and completed strong-arm robberies. The Legislature has concluded otherwise, when the defendant has two serious or violent felony priors. The court is certainly entitled to its opinion. It is not entitled however, to impose that individual opinion in lieu of the law of the State of California.

Defendant argues that the trial court did consider the particulars of the crime and defendant's background. He reviews the record too cursorily. The court did discuss at some length the nature of these crimes and defendant's history. But the court did not do so in considering whether to strike a prior. Once it had made that decision, it went on to discuss these factors in deciding to impose the upper term. Indeed, the court's discussion of these factors is extremely critical of defendant's conduct and history and establishes that the court did not elect to strike a prior because these factors supported a decision for leniency, but instead were based on the court's antipathy for the law itself.

Defendant relies on *People* v. *Bishop* (1997) 56 Cal.App.4th 1245 [66 Cal.Rptr.2d 347], for the proposition that a reviewing court may not overturn an exercise of discretion simply because it would have decided differently. We acknowledge that principle and are mindful that we may not substitute our conclusions for those of the trial court. We have not done so. Instead we conclude that this trial court's decision was an abuse of discretion because it was not based on appropriate legal principles, and because it substituted its conclusions for those of the electorate.

In light of the fact that the matter will be remanded for further action, we need not become embroiled in the parties' debate over whether the court properly calculated defendant's custody credits.

## Disposition

The order striking one of defendant's prior convictions is reversed as an abuse of discretion. We decline the Attorney General's invitation to dictate what sentence the trial court should impose. Should it choose to do so, the court may reconsider the question of defendant's priors and may exercise its discretion in a manner not inconsistent with this opinion and its own previous findings. The matter is remanded for resentencing and computation of appropriate custody credits.

Parrilli, J., and Walker, J., concurred.