[No. E022525. Fourth Dist., Div. Two. June 24, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
GEORGE LEWIS THORNTON, Defendant and Respondent.

## COUNSEL

Grover Trask, District Attorney, and Elaina G. Bentley, Deputy District Attorney, for Plaintiff and Appellant.

J. Michael Roake, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**RAMIREZ, P. J.**—This case comes to us a second time, on this occasion, following the trial court's granting of George Lewis Thornton's motion to dismiss two of his three "strike" priors pursuant to Penal Code section 1385. We agree with the People that the trial court abused its discretion in so ruling. Therefore, we reverse the trial court's order dismissing two of the

strikes and remand the matter to permit the trial court to reconsider its ruling, if it wishes. If not, Thornton must be resentenced.

### ISSUE AND DISCUSSION

a.  *Thornton's Background and the Circumstances of the Prior and Present Crimes*[1]

Thornton completed the 11th grade and obtained vocational training in refrigeration and air-conditioning repair. As of October 1988, he had been employed for five months as a laborer with a moving company, but was no longer working. At that time, he denied he had any addictions.

Thornton's life of crime began when he was 22 and was convicted of either petty theft, or theft as a misdemeanor, for which he received summary probation and local time. A little over two months later, he committed the misdemeanor of resisting/obstructing an officer, for which he received jail time. Later that year, he was convicted of misdemeanor unauthorized entry of property, for which he received summary probation and jail time. A little over a year later, he committed the misdemeanor of obstructing a public place, for which he served jail time. The following month, he was caught while under the influence of a controlled substance, for which he received probation and jail time. The same occurred three months later. A little over two months later, he committed a misdemeanor assault for which he received probation and jail time. He finished the year with the felonies of burglary, which became the third prior alleged in this case, possession of cocaine and attempted burglary with an armed enhancement, and the misdemeanor of possessing burglary tools, for which he was committed to prison. As to the burglary, Thornton entered the home of his former housemate and took the latter's cookies. Thornton claimed he had reentered the house to retrieve items he had left there, but the victim countered that he had given Thornton all his possessions earlier. As to the cocaine, it was found in the police unit in which Thornton had been transported following his arrest for burglary. As to the attempted burglary and possession of a burglary tool, a woman said she saw Thornton at her door, but he made no effort to announce his presence and when she questioned him he claimed he was looking for yard work. When she saw him a few minutes later, he had a

---

[1]Despite the People's references to the Penal Code section 1368 report that occurred in connection with People v. Thornton (Super. Ct. Riverside County, No. CR29393), since the trial court did not consider it, neither shall we. (See *People* v. *Preslie* (1977) 70 Cal.App.3d 486, 493 [138 Cal.Rptr. 828].) We hereby deny the People's request to take judicial notice of the "case print" (printout of all proceedings) in this case and the transcript of the preliminary hearing in No. CR29393 as neither is necessary to our decision. Neither do we need to refer to the Penal Code section 969b, records of the priors.

window screen in his hand. He was found with a pry tool on his person. After serving his prison term, he was paroled, but violated his parole three times and was returned to prison on each occasion. In the meantime, he was again apprehended while under the influence of a controlled substance, for which he received jail time.

Soon after his release from prison, and while a parolee-at-large, Thornton committed the burglary and robbery which became the first and second priors alleged in this case. Thornton entered the home of his 77-year-old next-door neighbor, who was in ill health, by breaking through the screen and unlocking the screen door after the victim told him not to enter. The victim told him to leave but he threw the victim down to the floor and took the victim's wallet out of his bathrobe pocket. Despite the victim's direction to stop, Thornton took $300 out of the wallet, leaving $54. Thornton later told the victim that "Mafia men" were after the victim and the latter owed him the money because Thornton saved his life. Earlier, Thornton, using the pretext that he wanted a drink of water, had twice entered the victim's home and, on one occasion, took a can of chili and, on another, a T-shirt and $3 or $4. The last incident occurred three or four days before the robbery. After Thornton was arrested, he refused to participate in a lineup at jail. Even after convicted, he denied culpability, claiming he had been "set up." The probation officer who authored the report concerning these crimes stated that there were no circumstances in mitigation, just circumstances in aggravation. Thornton was sentenced to prison for 11 years. He violated parole twice and was sent back to prison both times.

Six weeks after being released from prison and while still on parole, he committed the instant offenses. At the time, he was unemployed and homeless, but was receiving $670 per month in SSI (Supplemental Security Income) payments. Around 1:00 p.m. on September 12, 1995, he approached the victim, who had either cerebral palsy or multiple sclerosis, or both, and asked for $1, which the victim surrendered. After the victim withdrew $80 from a nearby automated teller machine and put the money in his wallet, Thornton approached him and told the victim to give him $20 or he would stab the victim. The victim handed over his wallet. Thornton took $20 and left. The victim told people nearby what had happened and two of them followed Thornton, yelling at him to stop. Thornton denied having taken $20 from the victim, claiming he had only the $1 the victim had given him earlier. Thornton said that he had both AIDS (acquired immunodeficiency syndrome) and tuberculosis. Even after his conviction by jury of first degree robbery and petty theft with a robbery prior, Thornton denied guilt. He admitted he was "a little loaded" on marijuana and heroin at the time, but was not "strung out." The probation officer who authored the reports in this

case stated in her original report, "[Thornton] was less than candid with this writer and accepts no responsibility for any wrong doing. He tended to blame others for his misfortune and does not perceive himself as criminally oriented." The probation officer found no circumstances in mitigation, but several in aggravation, including the fact that the victim was particularly vulnerable, the crime involved the threat of great bodily harm and that Thornton had engaged in violent conduct and had numerous prior convictions.

b.  *The Trial Court's Ruling*

The trial court refused to dismiss the 1988 robbery prior strike, but dismissed the 1985 and 1988 burglary prior strikes, saying:

". . . *Williams*[2] says the defendant and [his] background and character [are] to be evaluated to see if [they] fall . . . within the spirit of the sentencing scheme.

"The three strike[s] law is designed to deal with recidivists. And . . . Thornton . . . [is] that. [He has] a number of convictions. I don't think [he has] ever gone a significant period in [his] life without picking up a conviction of one kind or another.

"It is also a scheme which reserves the harshest consequences for those who commit serious and/or violent felonies. And that's what troubles me about this. [The prosecutor] calls [Thornton] a threat. In one sense [he is] because [he is], in the words of a former neighbor . . . a thief. And [he does] choose as [his] victim those . . . least able to defend themselves it appears.

"However, the sentencing law does not just ask for general view, but points of particular events in [the defendant's] past and says based on those particular events[,] should [the defendant] suffer the consequences of the three strike[s] law[?] And you look at those particular events, that it is alleged that in 1985 . . . [Thornton] had cookies in [his] hand and change in [his] pocket [taken from the home of a former roommate]. And that is apparently it.

"In 1988, there's an incident in which [Thornton] took money from the presence of another. That's clearly a robbery and clearly a robbery that falls within the spirit of this law. And no question that that strike is . . . one that should not be stricken.

---

[2]*People* v. *Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429].

"The other one from 1988 though involves [Thornton's] walking into [his] next door neighbor['s home] and taking a can of chili[,] . . . which maybe [Thornton's] neighbor didn't like . . . , but [the neighbor] didn't complain to the police at the time; or maybe it was the occasion [when Thornton] walked into the same neighbor['s home] and . . . took a T-shirt; or maybe it was the occasion [when Thornton] walked in and took three or $4.00 perhaps. The record is not clear.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"And I look on . . . that offense, I cannot say the voters or anyone else had a neighbor walking into a neighbor's house without permission and taking a can of chili, although it be without permission, but apparently within the presence and knowledge of the neighbor, that that's what they had in mind for a serious and violent felony.

"Nor can I say that [Thornton's] going back to [his] old apartment . . . and t[aking] cookies . . . is what anyone had in mind when they . . . use[d] the expression, serious or violent felony.

"And when I look at those offenses, I'm forced to come to the conclusion that those two offenses on the facts as presented to me here are not within the spirit of the legislation. And I do strike two of the three."

c.  *Williams and Its Progeny*

". . . [I]n [reviewing a] ruling whether to strike . . . a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, . . . the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, *and the particulars of his background, character, and prospects*, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People* v. *Williams, supra,* 17 Cal.4th at p. 161, italics added.)

In *Williams*, the California Supreme Court concluded that the trial court had abused its discretion in striking one of the two strike priors, saying, "There is little about Williams's present felony, or his prior serious and/or violent felony convictions, that is favorable to his position. Indeed, there is nothing. As to his present felony: It is a conviction of driving under the influence that followed three other convictions of driving under the influence; 'the existence of such convictions reveals that [he] had been taught,

through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson' [citation]. As to his prior serious and/or violent felony convictions: The record on appeal is devoid of mitigation.

"Similarly, there is little favorable about Williams's background, character, or prospects. . . . But neither can we ignore the fact that he was unemployed and did not follow through in efforts to bring his substance abuse problem under control. . . . He did not refrain from criminal activity during that span of time, and he did not add maturity to age. Quite the contrary. In those years, he was often in prison or jail; when he was not, he violated parole . . . ." (*People* v. *Williams, supra,* 17 Cal.4th at p. 163.)

In *People* v. *McGlothin* (1998) 67 Cal.App.4th 468 [79 Cal.Rptr.2d 83], the Court of Appeal overturned the trial court's dismissal of a strike prior, noting that, as to the instant crimes, there were several aggravating factors and none in mitigation. (*Id.* at p. 475.) The appellate court then noted that the defendant's background "brings him within every aggravating factor specifically set out in California Rules of Court, rule 421(b)" (*ibid.*), including the facts that he had a history of conduct which demonstrated that he was a danger to society, he had numerous prior convictions, he had served prior prison terms, he was on parole when he committed the instant crimes and his previous attempts at parole were unsuccessful. (67 Cal.App.4th at p. 475.) The court added that "[n]ot a single mitigating factor found in . . . rule 423(b) applies to defendant." (*Ibid.*) The Court of Appeal held that the trial court had essentially determined that the punishment, 25 years to life, was not warranted by what the defendant had done. The appellate court said, "Neither the facts of these crimes nor the circumstances of the defendant's personal history or current situation support a conclusion that he should 'be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had . . . not previously been convicted of one or more serious and/or violent felonies.' [Citation.] Here the court looked beyond the Three Strikes sentencing scheme itself and beyond the 'generally applicable sentencing principles.' [Citation.] Instead, the court simply concluded that life in prison was too harsh a penalty for attempted and completed strong-arm robberies. The Legislature has concluded otherwise, when the defendant has two serious or violent felony priors. . . . [¶] . . . [¶] Defendant relies on *People* v. *Bishop* (1997) 56 Cal.App.4th 1245 . . . , for the proposition that a reviewing court may not overturn an exercise of discretion simply because it would have decided differently. We acknowledge that principle and are mindful that we may not substitute our conclusions for those of the trial court. We have not done so. Instead we conclude that this trial court's decision was an abuse of discretion because it was not based on appropriate

legal principles, and because it substituted its conclusions for those of the electorate." (*People* v. *McGlothin, supra,* 67 Cal.App.4th at p. 477.)

█ We are guided by *Williams* and *McGlothin.*[3] Whatever the trial court's conclusion regarding the seriousness of Thornton's priors, we cannot affirm a decision which takes little or no account of "the particulars of [Thornton's] background, character and prospects," which, like the defendants in *Williams* and *McGlothin,* are dismal, and cannot be said to be outside the spirit of the three strikes law. Thus, as in those two cases, we determine that the trial court here abused its discretion. Remand to give the trial court an opportunity to reconsider whether to dismiss the strike priors is appropriate if the trial court is so inclined.

In reversing the trial court's order dismissing two of Thornton's three strikes, we are mindful of the eloquent statements made by the First District in *McGlothin,* "Our system of laws confers upon each judge the discretion necessary to weigh punishment and mercy, to find that exquisite balance in which a just sentence reposes. Yet, in a democracy, the scope of a judge's authority is encompassed by the judgment of the citizens who bestow on the judiciary its authority in the first instance. Under our statutory framework, judges are not empowered to fashion any sentence they choose. The Legislature has created a sentencing structure within which every court must operate. Both the Legislature and the People, by initiative, have adopted a particular sentencing scheme for repeat offenders. A court may not simply substitute its own opinion of what would be a better policy, or a more appropriately calibrated system of punishment, in place of that articulated by the People from whom the court's authority flows. Indeed, as Justice Sullivan noted in *People* v. *Orin* [(1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193]], the reason a court is required to state the basis for a [Penal Code] section 1385 dismissal is: ' "to protect the public interest against improper or corrupt . . . dismissals" and to impose a purposeful restraint upon the exercise of judicial power " 'lest magistral discretion sweep away the government of laws.' " [Citations].' [Citation.]" (*People* v. *McGlothin, supra,* 67 Cal.App.4th at pp. 476-477.)

---

[3]*People* v. *Garcia* (1999) 20 Cal.4th 490 [85 Cal.Rptr.2d 280, 976 P.2d 831], which Thornton cited in a letter brief submitted following oral argument, dealt primarily with the issue of dismissing strikes as to some current counts, but not as to others, a matter not involved here. Otherwise, *Garcia* stated the obvious, which is that the three strikes law's purpose, which is to ensure longer sentences, should not predominate the trial court's mind when deciding whether to dismiss a strike. That is also not at issue here. What is the issue is that the trial court did not pay sufficient attention to the factors which govern the determination whether a defendant is within or without the spirit of the three strikes law.

## DISPOSITION

The order dismissing two of Thornton's three strike priors is reversed. The matter is remanded to afford the trial court the opportunity to reconsider dismissal if it chooses to. If it does not, Thornton must be resentenced.

Hollenhorst, J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 20, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.