Filed 5/13/22  P. v. Acuna CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENITO ACUNA,<br><br>    Defendant and Appellant. | B312393<br>(Los Angeles County<br> Super. Ct. No. VA104941) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Scott A. Taryle, Deputy Attorney General, for Plaintiff and Respondent.

This appeal is limited to one issue: whether the trial court abused its discretion by denying defendant and appellant Benito Acuna's motion to dismiss a firearm enhancement (Pen. Code, § 12022.53, subd. (d))[1] on remand from a prior appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, a jury convicted defendant of first degree murder (§ 187, subd. (a)) and felon in possession of a firearm (former § 12021, subd. (a)(1)). The jury also found that the crimes were gang related (§ 186.22, subd. (b)), and that defendant personally used a firearm in the commission of the murder (§ 12022.53, subds. (b)-(d)). Defendant was sentenced to an overall term of 50 years to life, including a term of 25 years to life for first degree murder, and a consecutive term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). The court imposed and stayed a sentence (of an undefined term) under section 654 for felon in possession of a firearm.

As set forth in our opinion in defendant's first appeal, *People v. Acuna* (June 15, 2011, B223744) [nonpub. opn.]) (*Acuna I*), the evidence underlying the convictions showed that on February 24, 2008, a carwash to raise money for the funeral of a slain member of the Varrio Hawaiian Gardens (VHG) gang was held in the parking lot of Jim's Burgers in Hawaiian Gardens. Jeffrey Martinez, who had no gang affiliation, had driven his father to Jim's Burgers to get something to

---

[1]     Undesignated statutory references are to the Penal Code.

2

eat.  On their way out, they got into a fight with members of the VHG gang who were at the car wash, and Martinez was fatally shot six times in the back, all from the same gun.  (*Acuna I*, *supra*, at p. 1.)

The principal prosecution witness at trial was a 16-year-old boy who had witnessed the shooting while washing a car.  The boy identified defendant as the person he saw leave the fight, take a gun from under some towels, put it in his pocket, go back to the fight, punch Martinez, and draw the gun.  At that point, the boy hit the ground and heard gunshots.  (*Acuna I*, *supra*, at p. 1.)

Defendant and his 15-year-old son Benito (also referred to as Junior) were arrested on March 19, 2008.  Junior initially denied being at the car wash at the time of the shooting, but later admitted being there, hearing shots, and seeing his father running toward him with a gun.  He stated that, at his father's behest, he hid the gun at their apartment building.  Later his grandmother drove him and defendant to a ditch, where unbeknownst to his grandmother, defendant disposed of the gun.[2]  At trial, Junior recanted the statements, claiming they were prompted by psychological coercion by the investigating detectives.  A recording of Junior's statements was played to the jury.  (*Acuna I*, *supra*, at p. 1.)

In *Acuna I*, this court affirmed defendant's judgment in part, conditionally reversed in part, and remanded the matter to the trial court to conduct a new in-camera hearing under *Pitchess v. Superior*

---

[2]     Junior pled guilty to being an accessory to murder in June 2009. (*Acuna I*, *supra,* at p. 1, fn. 3.)

3

*Court* (1974) 11 Cal.3d 531 (*Pitchess*). Following a *Pitchess* hearing on remand, defendant filed his second appeal in *People v. Acuna* (Apr. 2, 2018, B279515) [nonpub. opn.] (*Acuna II*). In that appeal, we remanded the matter again to hold another *Pitchess* hearing. We also directed the trial court to consider its newly-enacted discretion to strike the firearm enhancements (§ 12022.53, subds. (b), (d)) under Senate Bill No. 620 (2017-2018 Reg. Sess.). (*Id.* at p. 1.)

On remand, and at another *Pitchess* hearing, the trial court found no discoverable records (a ruling not in issue in the current appeal). Defendant also filed a written motion to strike his section 12022.53, subdivision (d) enhancement.

In his motion, defendant referenced Special Directive 20-08.2 issued by Los Angeles District Attorney George Gascón.[3] Defendant's motion also attached a declaration from an attorney who had previously represented defendant in federal habeas proceedings.

In his declaration, habeas counsel stated that when defendant was first incarcerated, he received an inmate classification score of 57.[4]

---

[3] Los Angeles District Attorney George Gascón issued Special Directive 20-08.2 on December 18, 2020. The directive provided that firearm allegations under section 12022.53 "shall not be filed, will not be used for sentencing, and will be dismissed or withdrawn from the charging document." (L.A. County District Attorney Gascón, Special Directive 20-08.2 (Dec. 18, 2020) (Special Directive) https://da.lacounty.gov/sites/default/files/policies/SD-20-08-2.pdf [as of May 12, 2022] p. 1.)

[4] Habeas counsel explained that the inmate score used by the California Department of Corrections and Rehabilitation determines the facilities in which inmates are incarcerated, and the privileges to which they are entitled.

Defendant's inmate score declined, and as of April 2019, his inmate score was 21. Habeas counsel estimated that defendant's current inmate score (as of March 2021) was 19—the minimum score for an inmate sentenced to a minimum term of life imprisonment, and one reflecting an inmate with "a very low security risk." (Quoting *In re Stoneroad* (2013) 215 Cal.App.4th 596, 605.) Defendant had received "the best possible score of 1 'Lowest' on the [California Static Risk Assessment (CSRA),] and he also has superlative rankings on the Correctional Offender Management Profiling of Alternative Sanctions (COMPAS) system. . . . Based on his history and characteristics, the CSRA places [defendant] at 'low risk' for reoffending or [of] posing a danger to others."[5] Defendant had a history of laudatory conduct, and was actively participating in educational and community-based programs. Habeas counsel had "found records of only two disciplinary infractions" in defendant's correctional file: a 2016 positive drug test for morphine without adequate excuse; and a 2012 fistfight resulting in minor abrasions to those involved.

At the hearing on defendant's motion to strike, the court stated that it was aware of its "discretion under [section] 1385 and pursuant to

An initial score is calculated based on the crimes of conviction, criminal history, and length of sentence. Over time, points may be added for disciplinary infractions, and may be deducted for satisfactory behavior.

[5] Habeas counsel stated that the CSRA considers 22 objective criminogenic risk factors to predict an offender's likelihood of conviction upon release.

5

SB 1393 [*sic*] to strike one or more gun enhancements and to impose a lesser term." The court summarized defendant's post-conviction conduct and criminal history, which included "four sustained theft-related petitions as a juvenile and adult convictions for carrying a loaded firearm, possession of a controlled substance, and possession of a controlled substance for sale. [¶] He had no prior convictions for violence or any prior state prison commitments." The court also noted that defendant continued to deny any involvement in the murder,[6] and despite claiming he had stopped associating with a gang in the mid-1990's, the jury in this case found the gang enhancement to be true. The court then stated that it had gleaned "[t]he facts of the case" from our prior decision in *Acuna I*.[7]

Defense counsel argued that if defendant were charged today under the District Attorney's Special Directive, he would be subject to an indeterminate term of 25 years to life for murder, as the directive

---

[6] When the court inquired of defense counsel whether defendant still denied involvement in the murder, counsel replied that defendant "still adheres to the noninvolvement in the shooting, and that is the quandary that the defense is now facing pursuant to [section] 1385. We cannot show remorse or acknowledgment because he is saying he didn't do it."

[7] The Attorney General has requested that we take judicial notice of the prior appellate record in *Acuna I*. In so requesting, he asserts the prior appellate record sheds light on the "facts and circumstances of [the] murder, on which the trial court relied in denying [defendant's] motion." Defendant contends, and we agree, that the trial court on remand did not rely on the prior appellate record; instead, the court relied on the facts as stated in our opinion in *Acuna I*. We therefore deny the Attorney General's request for judicial notice.

6

prohibited the prosecutor from pursuing additional punishment based on section 12022.53. In light of that directive, defendant's post-conviction conduct, and family support, defense counsel requested that the court strike the section 12022.53, subdivision (d) enhancement, or impose a lesser enhancement under section 12022.5, subdivisions (b) or (c). Addressing the court personally, defendant stated that he was remorseful; and despite receiving certifications of rehabilitation for victim impact and awareness and relapse prevention, he intended to participate in future programs.[8]

The prosecutor responded that while the Special Directive prohibited him from "ask[ing] for the 12022.53 to be imposed," he would not join in defendant's arguments seeking to dismiss the enhancement. The prosecutor then identified various aggravating factors, including defendant's prior criminal record, that in the murder he shot a "completely innocent" victim six times in the back, and that he had used his minor son to help dispose the murder weapon. He also clarified that under his office's current policy, it was probable the prosecution would seek additional punishment for personal use of a firearm under section 12022.5 instead of section 12022.53.

---

[8] Defendant's family also addressed the court. Junior discussed how the judicial process constituted "a system that hurt a family; a system that also hurt an innocent defendant; a system that couldn't live up to accountability and its worth and not a reasonable factor of justice that has been served." Defendant's wife stated that her family had endured 13 years of hardship since her son and husband, each of whom was innocent, were taken away.

In ruling, the court acknowledged that defendant "has made some steps towards [rehabilitation], in that direction. . . . However, I find that the circumstances of the offense outweigh the mitigating factors, and that it would not be in the interest of justice for this court to modify the sentence that was imposed by the trial court." The court declined to strike the enhancement or reduce the sentence imposed on the enhancement.

## DISCUSSION

Defendant contends that the trial court abused its discretion by denying his motion to strike the firearm enhancement. We disagree.

Under section 12022.53, subdivision (d), a defendant "convicted of a qualifying felony who intentionally and personally discharges a firearm, proximately causing great bodily injury or death, is subject to an additional term of 25 years to life." (*People v. Garcia* (2002) 28 Cal.4th 1166, 1169.) As enacted by Senate Bill No. 620 (2017-2018 Reg. Sess.), and effective January 1, 2018, section 12022.53, subdivision (h), gives the trial court discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*); see § 1385, subds. (a)-(b) ["the judge . . . may, . . . in furtherance of justice" strike or dismiss an enhancement, or "may instead strike the additional punishment for that enhancement"].)

When determining whether to strike a firearm enhancement under section 12022.53, subdivision (h), the trial court must consider the same factors it uses when handing down a sentence, including California Rules of Court, rules 4.410 (general objectives in sentencing), 4.421 and 4.423 (circumstances in aggravation and mitigation), and 4.428 (factors affecting imposition of enhancements).  (*Pearson*, *supra*, 38 Cal.App.5th at p. 117.)  These factors "will be deemed to have been considered [by the court] unless the record affirmatively reflects otherwise."  (Cal. Rules of Court, rule 4.409.)

"A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is" reviewable for abuse of discretion.  (*People v. Superior Court* (*Romero*) 13 Cal.4th 497, 531.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'  [Citations.]  Second, a '"decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'  [Citations.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)  Thus, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id*. at p. 377.)

9

On this record, the trial court did not abuse its discretion in declining to strike the section 12022.53, subdivision (d) enhancement. The following aggravating factors are demonstrated by the evidence: defendant personally used a firearm during the commission of murder; the murder involved great violence and bodily harm; and defendant enlisted his mother and minor son to dispose of the murder weapon. (See Cal. Rules of Court, rules 4.421(a)(1)-(2), 4.421(a)(4)-(6), 4.421(a)(8), 4.421(c).) That defendant continues to deny involvement in the murder is also a relevant factor supporting imposition of the firearm enhancement. (See *id.*, rules 4.421(c), 4.423(b)(3), 4.423(c).)

Defendant raises several arguments in support of his contention that the court's refusal to strike the enhancement constituted an abuse of discretion. We address each in turn.

Defendant first asserts that his post-conviction conduct, criminal record, and family support present "a strong case for relief from the enhancement imposing an additional term of 25 years to life." (See *People v. Yanaga* (2020) 58 Cal.App.5th 619, 627 [on remand for resentencing, a court may consider a defendant's "postsentencing behavior in prison" as a sentencing factor under California Rules of Court, rules 4.421(c) and 4.423(c)].) The trial court, however, considered these factors. That the court did not find them weighty enough to strike the enhancement does not establish an abuse of discretion.[9]

---

[9] The trial court's full consideration of defendant's post-conviction conduct makes this case factually distinguishable from *In re Young* (2012) 204 Cal.App.4th 288, on which defendant relies. (See *id.* at p. 304 [Board of

10

Defendant next asserts that "nothing in the record" demonstrates that the court considered defendant's base term of imprisonment (25 years to life for murder) when ruling on his motion to strike. (See Cal. Rules of Court, rules 4.410(a)(2), 4.428(b) [courts may consider the effect of striking the enhancement on any relevant consideration].) However, to suggest that the trial court was somehow unaware of the sentence that would result if the enhancement were stricken is unsupported by the record. Indeed, it was the whole point of the motion: defense counsel argued that under the current District Attorney's policy, defendant would not be subject to an enhancement under section 12022.53, but would nevertheless face a lengthy, indeterminate term of imprisonment for murder. In any event, the relevant sentencing factors "will be deemed to have been considered unless the record affirmatively reflects otherwise". (Cal. Rules of Court, rule 4.409.)

Finally, defendant asserts that both the interest of justice and the legislative purpose underlying Senate Bill No. 620 require striking his firearm enhancement. The Attorney General contends, and we agree,

_____

Parole Hearings "ignored numerous suitability factors and evidence that were directly relevant to an evaluation of his current dangerousness"].) Moreover, the suggestion by defendant that *In re Young* stands for the proposition that the aggravated nature of the murder cannot in and of itself support imposition of sentence on the firearm enhancement is also incorrect. The discussion in *In re Young* did not address section 12022.53 or Senate Bill No. 620 specifically, or the sentencing law more generally. The court's discussion was limited to a different "body of statutes and regulations" pertaining to an inmate's eligibility for parole. (See *id.* at p. 301.)

that because defendant never raised this argument in the trial court, he has forfeited the contention on appeal. The forfeiture doctrine applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which . . . the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Even considering the argument on the merits,[10] we find it unpersuasive.

The term "in furtherance of justice" within section 1385 has been viewed by the Supreme Court as "amorphous" and indeterminate. (*People v. Williams* (1998) 17 Cal.4th 148, 159 (*Williams*).) The absence of a statutory definition of this expression has led to a "body of useful precedent which gives form to the above concept. [¶] From the case law, several general principles emerge. Paramount among them is the rule '. . . requir[ing] consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal.' At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.'" (*People v. Orinda* (1975) 13 Cal.3d 937, 945, citations omitted.) In adherence to these principles, the determination

---

[10] Though we consider defendant's argument on the merits, we do not address his use of the Special Directive. Defendant has never purported to establish any legal basis in which special directives or policies from a local prosecutor carry the force of law, or how those directives implicate a legal basis for relief.

whether to strike a prior conviction allegation or finding "in furtherance of justice" requires consideration "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior . . . felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit." (*Williams*, *supra*, at p. 161; see *People v. McGlothin* (1998) 67 Cal.App.4th 468, 474 ["the court must also be mindful of the sentencing scheme within which it exercises its authority"].)

Defendant contends that striking his firearm enhancement would be consistent with the spirit of Senate Bill No. 620, which he asserts was designed to ameliorate racial disparities in prison populations and overcrowding, and to better reflect academic findings concluding that there is no correlation between increasing a criminal sentence and deterring future criminality.

However, by providing courts with the direction to strike a firearm enhancement "'to a deserving defendant, while a defendant who merited additional punishment' would still receive it," the legislative history of Senate Bill No. 620 "reflects a legislative intent to retain the core characteristics of the sentencing scheme. More severe terms of imprisonment with the harshest applicable sentence remained the default punishment." (*People v. Tirado* (2022) 12 Cal.5th 688, 701–702; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) as amended June 15, 2017, p. 3 ["A defendant who merits additional punishment for the use of a firearm in the commission of a felony would receive it. SB 620 allows a court to decide whether or not to extend the sentence if a specific case indicates

that it would be appropriate to do so"].)  We find no abuse of discretion in the trial court's determination that defendant merits the additional punishment imposed by section 12022.53, subdivision (d).

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

COLLINS, J.

14