Filed 7/26/22  P. v. Myers CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br>v.<br>JUSTIN MICHAEL MYERS,<br><br>       Defendant and Appellant. | A162896<br><br>(Del Norte County<br>Super. Ct. No. CRF209442) |

Justin Michael Myers was sentenced to nine years in prison after pleading no contest to driving under the influence of alcohol (DUI), causing injury, within 10 years of another DUI offense, and admitting allegations that he personally inflicted great bodily injury and had suffered a prior strike conviction. He contends the trial court abused its discretion in denying his *Romero*[1] motion to dismiss the prior strike conviction. We disagree. Due to legislative developments since Myers was sentenced, however, the matter must be remanded for resentencing in light of amendments to Penal Code section 1170.

**BACKGROUND**

On August 20, 2020, shortly after 10:00 p.m., Myers was observed driving at a high rate of speed on Highway 199, tailgating other vehicles, and

_____

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

1

crossing double yellow lines to pass vehicles. He cut a corner and drove onto a gravel shoulder on the opposite side of the road, losing control as the vehicle fishtailed and crashed into a car that was parked on the shoulder. A man standing outside the parked car suffered a broken leg which, at the time of sentencing nine months later, still caused him pain, limited his activities, and required medical attention; he also suffered "PTSD-type [post-traumatic stress disorder] symptoms." Both cars sustained major damage, and the victim had incurred $25,000 in medical bills at the time of the hearing.

A police officer who responded to the scene of the collision observed signs that Myers was intoxicated, including the odor of alcohol on his breath and emanating from his person, red and watery eyes, and slightly slurred speech; subsequent testing showed Myers's blood alcohol content was 0.121 percent. Myers told the officer the crash was his fault, but said he had not been driving very fast, had been unable to make the corner due to worn rear tires, and had consumed only one beer earlier in the day. When interviewed by probation, he accepted responsibility for the collision and admitted he should not have been driving. He told the probation officer he had made changes in his life, was a "validated 'Northener' drop out, his last grant of Post Release Community Supervision was successfully discharged at the nine month mark in 2017" and since then he had no new arrests or convictions.

Myers had previously been convicted of four felonies and one misdemeanor. He was convicted in May 2012 of felony unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), and granted probation; he sustained a probation violation in September 2012 and probation was revoked in February 2013 due to a new offense. In November 2012, he was convicted of felony first degree burglary (Pen. Code, §§ 459/460) and misdemeanor DUI (Veh. Code, § 23152, subd. (a)), and sentenced to four

years in prison. In December 2013, he was convicted of receiving stolen property (Pen. Code, § 496, subd. (a)) and reckless evading of a police officer (Veh. Code, § 2800.2, subd. (a)), and sentenced to six years in prison.

By information filed on January 27, 2021, Myers was charged with two felony counts: driving under the influence of alcohol, causing injury (Veh. Code, § 23153, subd. (a)) (count 1) and felony driving with 0.08 percent or more blood alcohol content, causing injury (Veh. Code, § 23153, subd. (b)) (count 2). It was alleged that the offense occurred within 10 years of a conviction for violation of section 23152 (Veh. Code, § 23560); that Myers personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a), causing the offense to become a serious/violent felony (Pen. Code, §§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8)); that Myers caused bodily injury to more than one victim (Veh. Code, § 23558); and that Myers had suffered a prior conviction for first degree burglary (Pen. Code, § 459), a serious felony for purposes of sentence enhancement (Pen. Code, § 667, subd. (a)(1)), and a strike (Pen. Code, §§ 1170.12, 667.) A third count charged Myers with misdemeanor driving with a suspended driver's license, causing injury (Veh. Code, §§ 14601.2, subd. (a), 14601.4).

On April 1, 2021, pursuant to a plea agreement, Myers entered a plea of no contest to count 2 (Veh. Code, § 23153, subd. (b)) and admitted the allegations that the offense occurred within 10 years of another DUI offense (Veh. Code, § 23560), that he personally inflicted great bodily injury (Pen. Code, § 12022.7), and that he had suffered a prior strike conviction (Pen. Code, § 1170.12, subd. (c)(1)). This was an open plea with potential exposure of nine years, and it was contemplated that Myers would move to strike the prior strike. The charges in counts 1 and 3 were dismissed, as were the allegations that Myers caused injury to more than one victim (Veh. Code,

§ 23558), had a prior serious felony conviction and the present offense is a serious and/or violent felony (Pen. Code, § 667, subd. (a)(1)), and caused bodily injury while driving with a suspended license (Veh. Code, § 14601.4).

At sentencing on June 7, 2021, the trial court denied Myers's invitation to strike his prior strike conviction and sentenced him to nine years in prison: the upper term of three years for the section 23153 conviction, doubled due to the prior strike, plus three years for the great bodily injury enhancement.

Myers timely appealed.

## DISCUSSION

### I.

" '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code [section] 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*), quoting *People v. Williams* (1998) 17 Cal.4th 148, 161.)

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' (*Romero, supra,* 13 Cal.4th at p. 528.) To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless

4

the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377, quoting *People v. Strong* (2001) 87 Cal.App.4th 328, 337–338.) " '[T]he court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.' (*Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 441.) And '[w]hen the balance falls clearly in favor of the defendant, a trial court not only may *but should* exercise the powers granted to him by the Legislature and grant a dismissal in the interests of justice.' (*People v. Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 505.)" (*Carmony*, at p. 375.)

We review the trial court's refusal to dismiss or strike a prior serious and/or violent felony conviction allegation for abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 376.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978 (*Alvarez*), quoting *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.)" (*Carmony*, at pp. 376–377.) "[A] ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' (*Alvarez,* at p. 978, quoting *People v. Preyer* (1985) 164 Cal.App.3d 568, 573.)" (*Carmony*, at p. 377.) Thus, "[t]o show an abuse of discretion, the defendant must show that the trial court's

decision was 'so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 856, quoting *Carmony*, at p. 377.)

Myers maintains the trial court should have treated him as though he fell outside the "Three Strikes" scheme. He contends the court abused its discretion in failing to consider that he was 18 years old when he pleaded guilty to the prior conviction for first degree burglary; 12 years had elapsed between that offense and the current one; and the current offense stemmed from alcohol abuse rather than "sinister motives" and did not involve intentional infliction of harm or use of a weapon. He takes issue with the court's characterization of him as a "career criminal" despite the remoteness of his prior offenses and the positive changes he had made in his life.

At sentencing, defense counsel asked the court to dismiss the strike prior and/or the great bodily injury enhancement (either of which would have reduced the sentence to six years), and also to consider reducing the offense to a misdemeanor (Pen. Code, § 17, subd. (b)). Counsel described Myers as having worked to overcome a difficult background: His father, a "ranking member of the Hell's Angels," was abusive and abandoned the family shortly after Myers was born; his mother was emotionally and physically abusive toward Myers throughout his childhood; he joined a gang at age 14, was shot six times and nearly died; and he was diagnosed with and still suffered from PTSD due to his traumatic childhood. While in prison for burglary and receiving stolen property, Myers decided to give up his gang affiliation and live crime free. Since his release from prison, he had gotten a barber's license and had supported himself by lawful means, most recently working as a counter supervisor in a supermarket.

6

Counsel argued that Myers's current offense did not involve intentional use of force or violence, he was cooperative with law enforcement, he admitted wrongdoing early in the proceedings, showed remorse, and personally apologized to the victim. Stating that Myers was driving to offer help in response to an emergency call from a friend who suffered from PTSD, counsel maintained he used bad judgment in driving when he had been drinking, but did not display the "criminal mindset" the Three Strikes law was meant for and should not have three years added to his sentence for the strike "that occurred when he was 22." Myers personally told the court he understood he made a "wrong decision" getting in the car that night and was "speeding at a certain point at a certain time," but said it was "not what it was made out to be," his tire popped and threw him off guard, and he hit the other car because it was "on the opposite side facing the other way." Myers said he understood the victim had PTSD and ongoing medical issues, but did not understand "how he is making it seem like he is hurt so bad" when a video showed him kayaking and "jumping down rocks" three weeks after the incident.

The prosecutor disputed defense counsel's attempts to place part of the blame on the victim for how he was parked, downplay the victim's injuries, and overstate the length of time since Myers's last charges.[2] The prosecutor emphasized the seriousness of Myers's present offense: Despite being prohibited from legally driving at all because his license was suspended, he drove recklessly at high speed on a curvy road while intoxicated and caused great bodily injury to the person he hit. The prosecutor pointed out that

_____

[2] Defense counsel focused on the date Myers's prior offenses were committed rather than the date of conviction, stating that the conduct underlying his strike offense occurred in 2009, but he was not convicted until 2012, after being on a period of supervision which was then revoked.

Myers, having previously been convicted of a DUI, had received advisements about the dangers of drinking and driving,[3] that his prior convictions indicated he had issues with vehicles that posed a danger to the public, and that he had already received the benefit of having the Penal Code section 667, subdivision (a)(1), enhancement stricken as part of his plea agreement, thus taking five years off his sentence.

The probation officer agreed with the prosecutor. The probation officer acknowledged Myers's success on postrelease community supervision (PRCS) after his last release from prison and fact that he had no arrests or convictions for four years, but maintained this did not mitigate the damage done in the present case. Commenting on the victim's PTSD-like symptoms, the probation officer related that "just talking about it over the phone, he audibly started to cry about getting into the vehicle to go to his doctor's appointments and go across town; it's a traumatic event." The probation department believed striking the strike was not in the interest of justice because Myers "got intentionally behind the wheel of the car and knew he was driving and was significantly intoxicated. And based upon his prior conviction, he knew better."

The trial court declined to dismiss the prior strike, explaining it was not persuaded to do so in light of the number of Myers's convictions, the

---

[3] Pursuant to Vehicle Code section 23593, subdivision (a), "[t]he court shall advise a person convicted of a violation of Section 23103, as specified in Section 23103.5, or a violation of Section 23152 or 23153, as follows: [¶] 'You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder.' " This is referred to as the *Watson* advisement, after *People v. Watson* (1981) 30 Cal.3d 290, 296.

majority of which involved dangerous "behind-the-wheel" conduct, and the fact that the present case involved considerable damage, including bodily and psychological injury to the victim. The court stated: "He has maimed an individual and maybe permanently and I'm convinced of that. [¶] And when probation calls a full grown man can be brought to tears and may be permanently maimed, this is not a kind of case *Romero* should be given for." The court acknowledged, "it appears to me Mr. Myers has overcome a lot of his prior history, gang activity, that's a huge thing that ought to be recognized and applauded, even though a lot of damage was done in this particular case. . . ."

Myers argues the trial court failed to consider that he committed the strike offense 12 years before the current one, when he was 18 years old—a youth offender (Pen. Code, § 3051, subd. (a)(1)) with "diminished culpability" due to immature judgment and limited self-control, and "greater prospects for reform." (See *Miller v. Alabama* (2012) 567 U.S. 460, 471; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1142 (*Avila*).) He relies heavily on *Avila*, which held that the trial court abused its discretion in failing to strike any of the defendant's three prior strikes and that the sentence constituted cruel and unusual punishment under the California Constitution. (*Id.* at pp. 1139–1140.)

*Avila* was an example of the "extraordinary" case in which "no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Carmony, supra*, 33 Cal.4th at p. 378.) The defendant in that case demanded rent money from a man selling oranges and flowers at a freeway off-ramp and, when the man said he could not pay, squashed two bags of oranges; the next day, he approached a different man selling oranges near the same off-ramp and stomped on two bags of oranges,

9

saying " 'money, money, money.' " (*Avila, supra,* 57 Cal.App.5th at p. 1139.) The defendant was convicted of attempted extortion of the first man and attempted second degree robbery of the second man. (*Ibid.*) The trial court denied his motion to strike one of his three admitted prior strike convictions and sentenced him to 25 years to life plus 14 years. (*Ibid.*)

*Avila* held the court abused its discretion in failing to consider the remoteness of the prior strikes—two committed on a single occasion 28 years before commission of the current offenses and one committed 26 years before. (*Avila, supra,* 57 Cal.App.5th at p. 1141.) The court also did not consider the defendant's youth at the time he committed those prior offenses, 18 and 20 years of age respectively, mistakenly believing it was not permitted to do so. (*Id.* at pp. 1141–1142.) Moreover, the court abused its discretion in relying upon impermissible factors to find the defendant fell within the spirit of the Three Strikes law, viewing the current offenses as " 'violent' and 'brutal' " by speculating about what might have happened if the police had not been called, thus "implying the infliction of physical harm to the victims that never appeared in the evidence at trial," and inaccurately characterizing the defendant as a "career or habitual criminal" when he had committed no further violent felonies and his offenses in the decade prior to the current offenses were misdemeanors. (*Id.* at pp. 1142–1143.)

The circumstances in *Avila* differ from those here in at least two critical ways. First, Avila's current offenses involved no violence: Attempted extortion is not a serious or violent felony within the meaning of the Three Strikes law and attempted robbery is a serious offense but not a violent one. (Pen. Code, §§ 1192.7, subd. (c)(39); 667.5, subd. (c).) Myers's current offense, in which he inflicted great bodily injury on the victim, is both a serious and a violent felony. (Pen. Code, §§ 667.5, subd. (c)(8), 1192.7, subd. (c)(8).) While

10

there is no suggestion Myers intended to inflict the physical and psychological injuries he caused the victim to suffer, he intentionally drove with a suspended license, while significantly intoxicated, and his extremely reckless driving posed considerable danger to anyone on the road, as well as causing actual harm in the collision. Myers was necessarily aware of the danger he posed: Having previously been convicted of a DUI offense, we presume he received the *Watson* advisement informing him that driving under the influence is dangerous to human life, as required by Vehicle Code section 23593.

Second, Avila's prior strikes were significantly more remote. Counting from the date of commission, as Myers points out the *Avila* court did (*Avila, supra*, 57 Cal.App.5th at p. 1141 ["Avila committed his first strike offenses . . . in 1990"]), and accepting Myers's representation that the burglary he was convicted of in 2012 was committed in 2009, the strike would have been 11 years old when he committed the current offense. This time lapse is not brief, but it is far shorter than the 28 and 26 years in *Avila.* And the strike was followed by additional felony convictions in 2013, for which Myers was in prison or on PRCS until 2017—only a few years prior to the current offense.

Myers's prior non-strike convictions were also relevant. His prior DUI conviction, although a misdemeanor, confirms his knowledge of the dangerousness of driving while intoxicated, as indicated above. His felony convictions for unlawful driving or taking of a vehicle and driving in willful or wanton disregard for the safety of persons or property show his current offense to be part of a pattern of illegal and dangerous conduct involving vehicles.

11

Pointing to the *Avila* court's discussion of the potentially mitigating circumstance that the defendant was under 21 years of age when he committed his strike offenses (*Avila, supra*, 57 Cal.App.5th at p. 1142), Myers complains that the trial court failed to consider that his prior convictions "reflect the poor neurological development of a youth whose 'lack of maturity and [ ] underdeveloped sense of responsibility [led] to recklessness, impulsivity, and heedless risk-taking.' (*Miller v. Alabama, supra*, 567 U.S. at p. 471.)" This point was not raised in the trial court: Myers argued several mitigating circumstances, including that the prior strike was remote, but it did not argue Myers's culpability for the prior strike was reduced due to his age at the time it was committed. "A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.)

In any event, the trial court was surely aware that Meyers was young when he committed his prior offenses, as he was only 30 years old at sentencing. "*Avila* does not *mandate* consideration of a defendant's age at the time of a first strike; it simply identifies such age as potentially relevant. By identifying broad categories of information—'the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects' (*Williams, supra*, 17 Cal.4th at p. 161)—as the factors relevant to the *Romero* analysis, *Williams* gives trial judges substantial leeway in determining the most significant facts in each case." (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 861.) Here, the fact that several years had passed since the last of Myers's priors undermines Myers's attempt to cast the priors as youthful transgressions: The current offense continued a pattern of convictions for conduct reflecting what the trial

court referred to as "behind-the-wheel issues" despite Myers's increased age—and was of increased seriousness.

Myers also contends the trial court abused its discretion by failing to consider that the consecutive three-year great bodily injury enhancement already addressed the fact that Myers might have permanently injured a person. Myers cites no authority for the proposition that a fact underlying an enhancement may not also be considered in deciding whether to strike a prior serious felony conviction allegation. Indeed, his argument appears to treat the decision at issue as a discretionary sentencing choice rather than recognizing that he was asking the trial court to *depart* from a sentencing requirement prescribed by the Legislature and the electorate. (*Carmony*, *supra*, 33 Cal.4th at p. 377; *People v. McGlothin* (1998) 67 Cal.App.4th 468, 476.)

Myers asserts that no reasonable person could view imposition of a nine-year prison term for a DUI, in the circumstances of this case, as just. We cannot agree. Myers initially faced a potential sentence of 15 years; his plea agreement reduced that exposure through dismissal of some of the charges and enhancement and he entered his plea knowing he could be subject to a nine-year sentence. His view that the nine-year sentence is unduly harsh depends on downplaying the intentionality of the conduct underlying his present conviction for a serious and violent felony offense, the degree of harm he caused to the victim, and the significance of his history of convictions and violations of probation and parole—all points with which the trial court disagreed, as underscored by its decision to impose an upper term sentence.

The trial court acknowledged that Myers having "overcome a lot of his prior history, gang activity" was a "huge thing that ought to be recognized

and applauded," but nevertheless concluded the seriousness of the current offense made it inappropriate to view him as outside the spirit of the Three Strikes law. Even if the court had believed a nine-year sentence too severe for Myers's current offense, that belief would not have been sufficient to allow the court to substitute its view of a better sentence for the "particular sentencing scheme for repeat offenders" chosen by "the Legislature and the People, by initiative." (*People v. McGlothin*, *supra*, 67 Cal.App.4th at p. 476.) In short, this case is not so extraordinary that we can find the trial court abused its discretion in declining to strike the prior serious/violent felony conviction at sentencing.

## II.

As earlier noted, in sentencing Myers to nine years in prison, the trial court imposed the upper term of three years for the Vehicle Code section 23153 conviction, doubled due to the prior strike, plus three years for the great bodily injury enhancement. At the time Myers was sentenced, Penal Code section 1170, subdivision (b) gave the trial court broad discretion to decide which of the three terms specified for an offense would best serve the interests of justice. (See Pen. Code, § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 14.)

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended Penal Code section 1170, subdivision (b) in a number of respects, two of which are relevant to this case. First, Senate Bill No. 567 made the middle term of imprisonment the presumptive sentence. (Pen. Code, § 1170, subd. (b)(2); Stats. 2021, ch. 731, § 1.3.) Under the amended statute, "[a] trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a

14

reasonable doubt. ([Pen. Code,] § 1170, subd. (b)(1)-(2).)' " (*People v. Flores* (2022) 75 Cal.App.5th 495, 500, quoting Pen. Code, § 1170, subd. (b)(3).)[4]  Second, the amended statute created a presumption in favor of the lower term where specified circumstances were "contributing factor[s] in the commission of the offense," unless the trial court finds that "the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)  One of the specified circumstances is that the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (Pen. Code, § 1170, subd. (b)(6)(A).)

The parties agree that the Senate Bill No. 567 amendments apply retroactively to this case as "an ameliorative change in the law applicable to all nonfinal convictions on appeal.  (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)[5]

In selecting the upper term sentence, the trial court found five aggravating factors true:  The "crime involved an attempted or actual taking or damage of great monetary value"; the "defendant has engaged in violent conduct that indicates a serious danger to society"; the "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness"; the "defendant has

---

[4] Penal Code section 1170, subdivision (b)(3), permits a court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

[5] Myers did not raise the amendment of Penal Code section 1170 as an issue on appeal.  At our request, the parties submitted supplemental briefs addressing whether the statutory changes apply and, if so, whether the case should be remanded for resentencing.

served a prior term in prison or county jail under [Penal Code] section 1170(h)"; and the "defendant's prior performance on probation, mandatory supervision, [PRCS], or parole was unsatisfactory." (Cal. Rules of Court, rule 4.421(a)(9) & (b)(1)–(3), (5).) Myers did not stipulate to these factors and they were not found true beyond a reasonable doubt. Accordingly, as both parties recognize, resentencing is required.[6]

Further, the record indicates the potential application of Penal Code section 1170, subdivision (b)(6)(A). In addition to defense counsel's descriptions of Myers's traumatic and abusive childhood, the probation report states that Myers dealt with mental health issues as a juvenile and "has been previously diagnosed with Post Traumatic Stress Disorder." On remand, the trial court should consider Penal Code section 1170, subdivision (b)(6)(A), in exercising its sentencing discretion.

## DISPOSITION

The matter is remanded for resentencing in light of the amended Penal Code section 1170, subdivision (b). In all other respects, the judgment is affirmed.

---

[6] We recognize that one of the factors the trial court cited, Myers's prior prison term, could be relied upon based on a certified record of conviction. (Pen. Code, § 1170, subd. (b)(3).) The Attorney General does not suggest this one factor would be sufficient to avoid the need for resentencing, nor would we be persuaded by such an argument. (See *People v. Lopez* (2022) 78 Cal.App.5th 459, 466–468.)

_____

Mayfield, J.*

We concur:

_____

Richman, Acting P.J.

_____

Stewart, J.

*People v. Myers* (A162896)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17