Filed 5/27/26  P. v. Ribardo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

ALAN FRANK RIBARDO,

    Defendant and Appellant.

E084783

(Super. Ct. No. SWF2101164)

OPINION

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Christopher P. Beesley, and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury convicted defendant and appellant Alan Frank Ribardo of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 1), brandishing a weapon (§ 417, subd. (a)(1); count 2), and two counts of hit-and-run (Veh. Code, § 20002, subd. (a); counts 3 & 4). The jury also found true that defendant had two prior serious felony convictions (§ 667, subd. (a)) and 18 prior serious or violent strike convictions (§ 667, subds. (c), (e)). The trial court denied defendant's motion to dismiss his prior strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and sentenced him to 25 years to life. On appeal, defendant contends the trial court abused its discretion by denying his *Romero* motion. We find no abuse of discretion and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2020, two teenage friends, J.C. and B.H. were parked in a public parking lot in a truck after getting food. Defendant's vehicle was parked in a parking spot one space to the left of J.C.'s truck. J.C. and B.H. began eating in the truck when J.C. noticed defendant looking at him angrily for approximately five minutes. J.C. shrugged at defendant as to imply, "'What's up?'" In response, defendant grimaced and held up his arms as if to say "'What?'"

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

2

J.C. proceeded to back his truck out of the parking space when defendant flipped him off with two hands. J.C. returned the gesture. Defendant then proceeded to go into the back of his van from the driver's seat and exited the van from the passenger's side wielding a screwdriver. Defendant then ran towards J.C.'s truck, yelling and wielding the screwdriver with a stabbing motion. J.C. drove away in fear that defendant was "crazy."

J.C. and B.H. returned to the parking lot moments later. B.H. got out of the truck and threw ice from a cup onto the windshield of defendant's van. B.H. then got back into the truck on the passenger's side. Defendant turned his van on while J.C. drove out of the parking lot.

Defendant followed J.C. out of the parking lot and as they drove onto the street. While chasing J.C. and B.H., defendant rear-ended J.C.'s truck three times on different streets before fleeing. J.C. followed defendant in order to obtain his license plate number, while B.H. was on the phone with the police.

During the incident, J.O. witnessed defendant rear-end J.C. twice. J.O. drove his Jeep next to J.C.'s truck to determine if J.C. needed help. B.H. told J.O. that the police were coming.

J.O. then drove towards defendant's van to help. Defendant drove his van into the backside of J.O.'s Jeep, causing it to spin. Defendant then "t-boned" the Jeep on the passenger side, pushing the vehicle from the street and onto the sidewalk.

When J.O.'s Jeep stopped on the sidewalk, he got out of the Jeep and approached defendant's van. J.O. saw defendant grin, put the van in drive, and drive directly towards

3

J.O. J.O. jumped away from defendant's vehicle as he feared he was going to be hit. Defendant then fled the scene.

The police investigation that followed uncovered auto parts on the scene that corroborated the statements of J.C., B.H. and J.O. that described the Jeep being "t-boned." Police also found a screwdriver in the passenger side of defendant's van. Defendant admitted to police that he threatened J.C. and B.H. with a screwdriver and exclaimed to them, "'Come on. You want a piece of this old man?'" Defendant also admitted that he followed J.C.'s truck, rear-ended it once, drove toward J.O. after he exited out of his Jeep, and fled the scene.

Following a jury trial, defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)), brandishing a weapon (§ 417, subd. (a)(1)), and two counts of hit-and-run (Veh. Code, § 20002, subd. (a)). The jury also found true that defendant had suffered two prior serious felony convictions (§ 667, subd. (a)) and 18 prior serious or violent prior strike convictions (§ 667, subds. (c), (e)).

At sentencing, defendant orally moved to strike his 18 prior strike convictions. He argued that his prior offenses started over 40 years earlier, spanned about 10 years, and that after his release from custody in 2001, he lived a crime-free life for almost 20 years. He also asserted that failure to strike his prior strikes and sentencing him to an indeterminate term of 25 years to life would effectively result in a death sentence given his age of 74 years.

The prosecutor replied that although defendant's strikes were old, his current convictions for yet more serious, violent strike offenses demonstrated that defendant continued to pose a risk to the community. The prosecutor described defendant's 50-plus years of felonious serious violent criminal behavior as being the exact type of conduct contemplated by the "Three Strikes" law.

The trial court weighed defendant's concerns, his age, and the significant break between his prior crimes and his current convictions against the jury's finding that defendant had sustained 18 prior strikes, including robberies, assaults with firearms, personally inflicting great bodily injury in the commission of a felony, personal use of a firearm in the commission of a felony, and a federal conviction for an armed bank robbery. The court also considered the seriousness and violent nature of his behavior that led to his current convictions, noting that defendant committed a "doozy in which the violent conduct was extreme, put lives at risk." While empathizing with defendant's situation, the court denied defendant's *Romero* motion and sentenced him to 25 years to life.

### III.

### DISCUSSION

Defendant argues that the trial court abused its discretion when it denied his *Romero* motion for several reasons. First, he contends that the nature of the circumstances was unusual when he attempted to run over J.O. because J.O. inserted himself into the incident. Second, defendant argues that his prior strike convictions do

not support the trial court's decision because it is unclear whether his federal bank robbery conviction qualifies as a strike offense under California law and his 12 robbery convictions in 1998 arose from a single crime spree.  Third, defendant asserts that he has lived a crime-free life for the past 19 years after he was released from prison in 2001, so all of his convictions are "remote in time."  Finally, he contends his "background, character, and prospects" supported his *Romero* motion.  We find no abuse of discretion.

A trial court has discretion to dismiss a prior violent or serious felony conviction pursuant to the Three Strikes law.  (*Romero*, *supra*, 13 Cal.4th at p. 504.)  In deciding whether to grant a *Romero* motion, the trial court must "'consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'"  (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*), quoting *People v. Williams* (1998) 17 Cal.4th 148, 161.)  "A repeat criminal falls outside the spirit of the Three Strikes law only in extraordinary circumstances."  (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786.)

On appeal, we review a trial court's refusal to strike prior conviction allegations for abuse of discretion.  (*Carmony*, *supra*, 33 Cal.4th at p. 374; *People v. Williams*, *supra*, 17 Cal.4th at p. 162.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony*,

*supra*, at p. 377.)  Absent a showing that the lower court acted arbitrarily or irrationally, a reviewing court presumes the trial court "acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."  (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.) We neither reweigh evidence nor substitute our judgment for that of the trial court. (*Carmony*, *supra*, at p. 377.)  Thus, "[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance."  (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310.)

Here, the trial court's ruling was not irrational or arbitrary.  The court, in detail, explained the reasons for denying the *Romero* motion.  It acknowledged that the strikes were decades-old, but noted that defendant has suffered 18 strikes, which were largely violent offenses.[2]

The trial court also properly emphasized that defendant's current offenses were serious and violent.  As described by the trial court, the nature and circumstances of the current felony were a "doozy in which the violent conduct was extreme [and] put lives at risk."[3]  Defendant threatened J.C. and B.H. with a screwdriver and followed them in his

---

[2]  Defendant argues his federal bank robbery conviction does not qualify as a strike.  But the jury found that it did, and he does not raise a substantial evidence challenge to that finding, so we are bound by it.

[3]  At sentencing, defendant argued that he "was the victim here" and reiterated his trial argument that "this wouldn't have even occurred had somebody not come at me."

*[footnote continued on next page]*

van at high speeds, and rammed his car into J.C.'s truck multiple times. Furthermore, when J.O. stepped in to help J.C. and B.H., defendant t-boned J.O.'s Jeep, pushing it onto the sidewalk with his car, and then attempted to run over J.O. when he had climbed out of his Jeep. The nature and circumstances of the present offenses demonstrated that defendant continues to pose a threat to society.

Defendant nonetheless argues that he does not "fall within [the] spirit of the Three Strikes [l]aw" because all of his state convictions were either part of a "single 'crime spree'" or remote. But nothing in the record suggests that the crimes were committed during a "single 'crime spree'"[4] and the "remoteness of a prior conviction, 'by itself, cannot be the basis for dismissing a prior strike conviction.'" (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 12; see also § 667, subd. (c)(3) ["[t]he length of time between the prior serious or violent felony conviction and the current felony conviction shall not affect the imposition of sentence"].) Instead, remoteness is only a factor in mitigation,

Although the court considered those "valid points," the trial court reasonably rejected defendant's argument that the victims' conduct justified his behavior. On appeal, defendant argues his conduct was "reactionary," "aberrational," and "unlikely to occur," which justified granting his *Romero* motion. Even if true, the trial court permissibly found that defendant's "extreme," violent conduct in committing the current offenses and his criminal history placed him within the Three Strikes law.

[4] Although defendant was convicted of his 17 strike offenses on May 26, 1988, the record is silent as to when the underlying criminal conduct occurred. We therefore cannot determine whether they were committed as part of a "single crime spree," as defendant contends. It is the defendant's burden to provide the trial court with evidence to support his *Romero* motion. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.)

8

which the trial court properly considered here. (*People v. Avila* (2020) 57 Cal.App.5th 1134, 1141.)

Like the trial court, we acknowledge that defendant led a crime-free life between 2001, when he was released from custody for his 1988 convictions, and 2020, when he committed the current offenses. And, like the trial court, we recognize that defendant was living a "quiet life" and spent his time "staying out of trouble and just going to senior centers and the library." This nearly 20-year crime-free period could reasonably be construed as "a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways," which could weigh in favor of granting defendant's *Romero* motion. (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) The trial court thus appropriately gave "great weight" to this crime-free period and considered how defendant spent his days.

But the abuse of discretion standard is a demanding one for a defendant to meet. A trial court abuses its discretion in denying a *Romero* motion only in a few limited circumstances, including when the trial court was unaware of its discretion to dismiss a strike, when it considered impermissible factors in declining to dismiss, or "'the sentencing norms . . . produce an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) None of these limited circumstances occurred here. The trial court's comments at sentencing show that its decision to deny defendant's *Romero* motion was "an individualized one based on the particular aspects of the current offenses for which the defendant has been

convicted and on the defendant's own history and personal circumstances." (*People v. McGlothin* (1998) 67 Cal.App.4th 468, 474.)

Again, the trial court reasonably emphasized the violent, dangerous nature of defendant's past and current offenses. (See *People v. Carrasco* (2008) 163 Cal.App.4th 978, 993 ["[T]he trial court considered a wide range of appropriate factors in [denying defendant's *Romero* motion], particularly the nature and circumstances of appellant's present and past convictions."].) The trial court correctly noted that the amount of defendant's prior strikes was "extreme and probably rare," and the offenses were "serious and violent." And as the trial court rightfully observed, defendant's "extreme" conduct in committing his current offenses put "lives at risk." It was thus well within the trial court's discretion to conclude that defendant did not fall "outside the [Three Strikes] spirit" and should not "be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at pp. 161, 163.)

In arguing otherwise, defendant relies heavily on *People v. Dryden* (2021) 60 Cal.App.5th 1007 (*Dryden*). The case is distinguishable.

In *Dryden*, *supra*, 60 Cal.App.5th 1007, the Court of Appeal held that a trial court's "strict application of the Three Strikes law . . . resulted in a sentence so out of proportion to the offenses as to be an abuse of discretion." (*Id*. at p. 1013.) In 2013, the defendant was convicted of two counts of assault with a deadly weapon, which involved the defendant striking "two members of a group of five young men with a bamboo stick,

10

scratching one and raising a welt on the neck of the other." (*Id*. at pp. 1013, 1031.) Prior to these offenses, the defendant suffered three prior strike convictions: a 1989 conviction for residential burglary, a 2005 conviction for assault with a deadly weapon, and a 2007 conviction for residential burglary. (*Id*. at p. 1030.) The trial court denied the defendant's *Romero* motion and imposed a sentence of 25 years to life, consecutive to 15 years. (*Dryden*, *supra*, at p. 1016.) At the time, defendant was 53 years old. (*Id*. at p. 1031.)

The Court of Appeal concluded the trial court abused its discretion in denying the *Romero* motion because the "defendant's criminal behavior here resulted from a late-night, spontaneous altercation between an intoxicated and mentally ill homeless person and a group of youths," the altercation was not "similar to [the] defendant's prior strikes which . . . were characterized by either substantial violence or the deliberate entry into homes to steal," and the defendant had a "'history of homelessness, mental health issues, and alcoholism [which] most likely contributed to his actions[.]'" (*Dryden*, *supra*, 60 Cal.App.5th at p. 1031.) The *Dryden* court held that the trial court's "de facto life" sentence was "'disproportionate to the severity of the present offense'" and amounted to a "rare instance of an absurd result." (*Ibid*.)

Here, unlike in *Dryden*, defendant's encounter was not spontaneous and his current offenses were violent and extreme. Defendant deliberately followed the victims and engaged in substantial, repeated acts of violence, including crashing into their vehicles multiple times and attempting to run J.O. over. Defendant endangered the lives

11

of the victims and posed a much greater threat than the defendant in *Dryden*. We thus cannot say that defendant's sentence is disproportionate to the severity of his current offenses. And, unlike the *Dryden* defendant, defendant has no history of homelessness, mental health issues, or alcoholism that contributed to his conduct at issue here.

It is true that defendant's age of more than 70 years old renders his 25-years-to-life sentence a de facto life sentence. While a trial court may consider a defendant's age when ruling on a *Romero* motion, defendant's old age "is not a reason for him to be deemed outside of the spirit of the mandatory Three Strikes sentencing scheme." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 391.)

The trial court noted that defendant was "73, 74" when he committed his current offenses and expressed "sympathies and empathies" for him "and his circumstances," but found that it could not grant his *Romero* motion "however onerous the ultimate outcome and sentence will end up being." The court thus expressly recognized that defendant was being sentenced to a lengthy term when in his 70s. We thus reject defendant's suggestion that the trial court did not consider defendant's age in imposing sentence and did not consider whether the sentence was disproportionate. Instead, the trial court found that defendant falls within the spirit of the Three Strikes law, despite his age and the de facto life sentence imposed. As a reviewing court, we neither reweigh evidence nor substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) It matters not how much we may disagree with a trial court's exercise of discretion, but whether other reasonable minds could have reached the same conclusion. (See *People v.*

*Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978.)  Based on our review of the record, we conclude that the trial court did not act arbitrarily or irrationally in denying defendant's *Romero* motion.  We cannot say that this was an "extraordinary case" where the relevant considerations "manifestly support the striking of a prior conviction" and that "no reasonable minds could differ."  (*Carmony*, *supra*, at p. 378.)

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
Acting P. J.

We concur:


<u>MENETREZ</u>
J.


<u>LEE</u>
J.